O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GAMAL OMAR A.,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>ANDREW M. SAUL, Commissioner of Social Security,<br><br>　　　　Defendant. | Case No. 8:19-cv-02301-KES<br><br>MEMORANDUM OPINION AND ORDER |

**I.**

**PROCEDURAL BACKGROUND**

　　In March 2017, Plaintiff Gamal Omar A. ("Plaintiff") applied for Title II social security disability benefits alleging an onset date of April 19, 2015. Administrative Record ("AR") 22, 180-86, 206. On February 19, 2019, the Administrative Law Judge ("ALJ") conducted a hearing at which Plaintiff, who was represented by counsel, testified along with a vocational expert ("VE"). AR 33-58. On April 3, 2019, the ALJ issued an unfavorable decision. AR 12-32.

　　The ALJ found that Plaintiff suffered from the severe impairments of "interstitial lung disease and left shoulder rotator cuff tear, status post repair." AR 18. He suffered from non-severe impairments including hypertension, diabetes

mellitus, mild obstructive sleep apnea, gastroesophageal reflux disorder, history of medullary thyroid cancer, cervical and lumbar degenerative disc disease, anxiety, and depression. AR 18-19. Despite these impairments, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform light work with the following additional limitations:

> [Plaintiff] could lift, carry, push [or] pull up to 20 pounds occasionally and 10 pounds frequently; could stand or walk for about 6 hours out of an 8-hour day; could sit for about 6 hours out of an 8-hour day; could frequently climb ramps and stairs, and occasionally climb ladders, ropes or scaffolds; could frequently balance, stoop, kneel, crouch and crawl; could occasionally reach overhead with the left nondominant upper extremity; and must avoid exposure to pulmonary irritants such as excessive fumes, odors, dusts, or gasses.

AR 21 (citing 20 C.F.R. § 404.1567(b) (defining light work)).

Based on this RFC and the VE's testimony, the ALJ found that Plaintiff could do his past relevant work as a cashier and convenience store manager. AR 25. The ALJ concluded that Plaintiff was not disabled. AR 26.

## II.
## ISSUE PRESENTED

This appeal presents the sole issue of whether the ALJ erred in discounting Plaintiff's subjective symptom testimony. (Dkt. 18, Joint Stipulation ["JS"] at 4.)

The Ninth Circuit has "established a two-step analysis for determining the extent to which a claimant's symptom testimony must be credited." Trevizo v. Berryhill, 871 F.3d 664, 678 (9th Cir. 2017). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007) (citation omitted). "Second, if the claimant meets the first test, and there is no

evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" Id. (citation omitted). If the ALJ's assessment "is supported by substantial evidence in the record, [courts] may not engage in second-guessing." Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002).

# III.
# DISCUSSION

### A. Summary of Plaintiff's Work History.

Plaintiff filed a previous claim for disability benefits that was denied in July 2016. AR 204. In the instant application, Plaintiff identified his disabling conditions as surgery for thyroid and "lymph [node]" cancer in October 2015[1], Chronic Obstructive Pulmonary Disease ("COPD"), and chronic lung disease. AR 206. He did not claim disabling musculoskeletal pain, such as back or knee pain.

Plaintiff stated that he stopped working on April 19, 2015. AR 206. In his Work Report, he stated that he worked at a Chevron station from 2003-2011, working his way up from cashier to store manager. AR 39-40, 207. He later worked part-time in a "payroll/HR" position in 2014 and 2015, but that job was not substantial gainful activity ("SGA"). AR 38, 43, 207. The ALJ noted that Plaintiff's most recent earnings were in 2017, but they also did not rise to SGA. AR 18.

Plaintiff testified that most of his work was at Chevron through 2011. AR 39. He testified that he also did "a little shuttle driving" before injuring his shoulder in April 2015; the ALJ found that his work as an airport shuttle driver was not SGA. AR 43, 289.

---

[1] Plaintiff seems to have mis-stated the date, because his thyroidectomy on the right side of his neck occurred in January 2016. AR 657.

B. **Summary of the ALJ's Decision.**

The ALJ summarized Plaintiff's hearing testimony. AR 21-24. The ALJ found that his "statements concerning the intensity, persistence and limiting effects of [his] symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." AR 21-22. In addition to lack of support from objective, medical evidence, the ALJ's other reasons were inconsistency with Plaintiff's (1) symptom reporting to his treating sources, (2) being able to drive on the freeway, and (3) conservative treatment history. AR 23-24. Because the lack of supporting medical evidence alone is insufficient to discredit subjective symptom testimony, the Court considers the ALJ's other reasons.

    **1.** **Reason One: Inconsistent Symptom Reporting.**

        a. Left Shoulder Pain.

Plaintiff injured his shoulder in April 2015 working "as a shuttle driver at an airport. He [told his doctors] that he lifted a heavy bag of luggage onto the shuttle and hurt his left shoulder." AR 289. The bag weighed over 90 pounds. AR 301. He "heard a pop." AR 309. He obtained treatment through his employer's workers' compensation insurance. Id. About a month after the injury in May 2015, Plaintiff rated his left shoulder pain 5/10, and he reported that the pain occurred "only when moving." AR 301. Per a June 2015 MRI, he was diagnosed with a "small" rotator cuff tear. AR 440. By July 2015, he rated his pain 1/10. AR 354.

Despite this improvement, Plaintiff had arthroscopic decompression surgery to repair his left rotator cuff in January 2016. AR 486. His post-surgery recovery was slower than expected. See, e.g., AR 600 (March 2016 record: "S/p cuff repair with EXTREMELY POOR pain tolerance that is having a hard time with PT. Not following instructions as expected and is taking too many pain meds."). But by August 2016, his "worst" shoulder pain was 5/10 (AR 694) and by September

2016, he told his doctors that his left shoulder felt "fine." AR 705. His doctors recognized that his job duties at Super Shuttle required "heavy lifting of luggage[.]" AR 711. Nevertheless, on September 13, 2016, they cleared him to return to "full work duties without restriction" at Super Shuttle. AR 706.

Plaintiff went back to work and immediately suffered another injury in September 2016 "carrying luggage in Anaheim[.]" AR 832. He kept working, however, until he suffered a third injury on October 13, 2016, trying to load luggage at John Wayne Airport that was "big and heavy[;]" he felt pain "shooting to his left shoulder, left arm, and lower back." AR 831. The October 2016 injury led to additional treatment through the workers' compensation system. Id. At the initial medical examination, he acknowledged his April 2015 injury and January 2016 surgery, but he did not report that he was taking any pain medication in October 2016 due to that earlier injury. AR 842. He told his doctors that he had "worked full-time in 12-hour shifts for Super Shuttle International since 2011." AR 841-42.

His October 2016 injury was deemed "100% work-related[.]" AR 845. He was referred to treatment including physical therapy in November 2016, at which time he reported neck and back pain, but no left shoulder or knee pain. AR 827. By June 2017, he had recovered sufficiently to have motor strength of "5/5 throughout." AR 1353.

At the February 2019 hearing, Plaintiff testified that his left shoulder was still "very bad." AR 44. It was so bad that he could not use his left arm to lift as much as a gallon of milk which weighs about 8 pounds. AR 48.

The ALJ summarized Plaintiff's testimony and contrasted it with the treatment history for his April 2015 left shoulder injury, showing improvement. AR 22-24. Plaintiff's statements to his doctors in July and September 2016 (i.e., after the surgical repair of his rotator cuff tear) that his pain was "5/10" and his left shoulder felt "fine" are inconsistent with his testimony in 2019 that he could not

5

lift a gallon of milk. While Plaintiff now argues that his left shoulder did not improve as much after his April 2015 injury as the ALJ asserts (JS at 8), Plaintiff completely fails to acknowledge that (1) his shoulder improved enough by September 2016 that he returned with his doctors' clearance for full-time work as a shuttle driver lifting heavy luggage, and (2) he suffered a new injury to his left shoulder only as a result of working a heavy job in October 2016, long after his alleged disability onset date.

                b.      Knee Pain Causing Difficulty Walking or Standing.

At the beginning of the hearing, Plaintiff's lawyer told the ALJ, "There's also an older Workers' Comp claim regarding his knees. And there's some meniscus degeneration and ACL degeneration with the right knee." AR 38. By "older," the lawyer presumably meant pre-dating the April 2015 workers' compensation claim for Plaintiff's left shoulder injury and possibly relating to his earlier denied application for disability benefits. The AR contains no medical records describing these knee conditions.

Plaintiff testified that when he stands, he has "an issue with my left knee. So, standing not too much." AR 49. He estimated that when standing, his knee pain was so bad after 25-30 minutes, he would need to sit. AR 50.

The ALJ noted Plaintiff's testimony that he had knee pain. AR 21. The ALJ then summarized Plaintiff's treating records during the period of claimed disability, noting that none of them address knee pain. AR 23-24. Indeed, in all the treatment records for his April 2015 shoulder injury, including physical therapy records, Plaintiff does not cite any record (and the Court saw none) in which Plaintiff ever told a treating source that he suffers from knee pain. To the contrary, even when asked about pain or prior injuries, Plaintiff did not complain about knee pain. See, e.g., AR 332 (he did not identify any "significant history of injuries" in April 2015); AR 347 (his physical therapist assessed no limits on standing or walking in June 2015); AR 827 (in November 2016 after his third lifting injury, he

reported neck and back pain, but no knee pain); AR 829 (same in January 2017); AR 980 (he denied "joint pain" in April 2017); AR 1925 (he denied difficulty walking in January 2019, just one month before the hearing).

Not only was Plaintiff's testimony about the limiting effects of his knee pain inconsistent with what he told his treating sources, but also it was inconsistent with what they observed. Plaintiff was often described as having a steady or normal gait. AR 490 (July 2015); AR 2812 (November 2016); AR 1434 (July 2017); AR 2355 (February 2018); AR 1967 (November 2018); AR 1849 (January 2019). In September 2016, his workers' compensation doctors cleared him to return to work with no restrictions on walking or standing (AR 706-07) and in March 2017, he walked a longer distance during a 6-minute walking test than the lower range of normal (AR 1000).

    c.  Shortness of Breath.

Plaintiff testified that "any activity make[s] me short of breath." AR 47. He would "get short of breath right away" just from walking. AR 48. "Anytime" he walked, he needed "to take a short rest. I have to stop." AR 46.

The ALJ contrasted this testimony with statements Plaintiff made to his treating sources. AR 23-24. While Plaintiff told his doctors that he had a history of lung disease pre-dating April 2015 (AR 405), they cleared him to return to work with no exertional limitations in September 2016 (AR 706-07). As another example, in October 2017, Plaintiff "reported that he was feeling much better and he only had shortness of breath with exertion, especially stairs." AR 23 (referencing AR 2550). In January 2019, Plaintiff denied shortness of breath. AR 1925; see also AR 1387 (Plaintiff denied breathing difficulties in May 2017); AR 1951 (Plaintiff denied shortness of breath in December 2018).

The ALJ also noted records in which medical sources noted that Plaintiff's breathing was normal or unlabored. AR 23 (citing e.g., AR 2918). While Plaintiff points to other records documenting that sometimes he had shortness of breath (JS

7

at 13-14), the ALJ's finding that Plaintiff exaggerated the frequency of his shortness of breath is supported by substantial evidence in the record.

    d. Coughing.

Plaintiff testified, "I cannot breathe at all, especially when somebody have some perfume or something. I cough." AR 45. "The muscles in my throat … catch my tongue so I cannot breathe." Id. He also testified that his coughing was so bad, it prevented him from grocery shopping, because he was embarrassed to be around other people when he coughed. AR 47-48.

The ALJ contrasted this testimony with Plaintiff's statements to his doctors, as follows:

> On June 25, 2018, the claimant reported having a cough since May, yet a treatment note dated June 1, 2018 documented that he denied having any cough, wheezing, or shortness of breath on exertion. He also denied any shortness of breath or wheezing on January 3, 2019, and pulmonary examination revealed normal effort and breath sounds.

AR 24 (citing AR 2159, 2205, 2921); see also AR 302 (Plaintiff denied cough and shortness of breath in May 2015).

In November 2016, Plaintiff reported a chronic cough for the past 6-7 years.[2] AR 1061. Thus, this condition overlapped with years when Plaintiff was working at Chevron and for Super Shuttle. By January 2017, however, he reported that "since starting steroids on 11/15/2016 his cough of 6-7 years resolved and he feels his breathing has improved greatly. His activity level has increased." AR 1032. In April 2017, he reported some of his coughing as an allergic reaction to "problem

---

[2] Plaintiff's cough may be attributable to the fact that he was a heavy smoker (2 packs/day) for about 30 years. It is unclear when exactly he quit, because his medical records identify dates ranging from 2010 to 2016. AR 491, 534, 705, 972, 982, 1009, 1147, 2478.

foods" that he could address by not eating those foods, noting that when on prednisone, he could even "tolerate problem foods" without coughing. AR 971.

Again, the record supports the ALJ's finding that Plaintiff made inconsistent statements about the degree to which coughing caused him functional limitations.

        e.        Back Pain.

Plaintiff testified that his sitting was limited by lumbar pain. AR 44; see also JS at 4 (Plaintiff's doctors have recommended lumbar surgery).

When Plaintiff attended physical therapy in 2015, however, he could "sit, stand[], and ambulate[] without apparent distress." AR 448. When he listed his medical problems in November 2015, he did not identify back pain. AR 397.

He reported back pain in January 2017 after his third lifting injury in October 2016. AR 829. By May 2017, however, he completed a "Pain Assessment" in which he denied pain. AR 1393. He denied pain again in October 2017 (AR 2556) and had a negative straight-leg raising test in January 2019 (AR 2921).

The record therefore supports the ALJ's finding that Plaintiff made inconsistent statements about the extent to which he experienced lower back pain causing functional limitations.

      **2.**      **Reason Two: Freeway Driving.**

In July 2015, a biopsy revealed that Plaintiff had a cancerous thyroid nodule. AR 493. Plaintiff had a thyroidectomy on the right side of his neck in January 2016. AR 657. At the 2019 hearing, he testified, "I get the cancer tissue right here, I have a lot of pains and pain in my right, right neck. I cannot really turn my head more than this." AR 45. Plaintiff told doctors that he had "increasing neck stiffness and decreased range of motion since surgery in 2015." AR 2404.

The ALJ also noted that in January 2019, Plaintiff was involved in a car accident. AR 23-24 (citing AR 2918). Per the hospital's admission records, Plaintiff was driving on the freeway and was rear-ended. AR 2918-19. He "hit his

1  head on the steering wheel[.]" AR 2918. He was transported to the hospital via
2  ambulance where he complained of "acute strain of neck muscle." Id. When
3  examined, however, his neck had a "normal range of motion." AR 2920.
4  Ultimately, he "declined a WC [wheelchair] and departed … with a steady gait[.]"
5  AR 2918.

6  The ALJ found that Plaintiff's subjective symptom testimony was
inconsistent with his "activities of daily living." AR 24. Since freeway driving is
the activity discussed by the ALJ, the Court understands that the ALJ was
identifying freeway driving as an activity inconsistent with Plaintiff's testimony.

10  Being able to drive on the freeway is inconsistent with Plaintiff's testimony
that he was unable to turn his head much since his thyroidectomy in 2016. AR 45.
His testimony also lacks supporting medical evidence, in that many post-January
2016 records identify his neck as "supple" or having a "normal" or "full" range of
motion. See, e.g., AR 983 (April 2017); AR 1434 (July 2017); AR 2872
(December 2017); AR 1826 (December 2018); AR 1926 (January 2019). While he
reported neck pain in May 2017 after his second and third injuries lifting luggage
(AR 832, 1372-74), he had a "normal" range of neck motion by December 2017
(AR 2872).

19  The Court does not consider whether Plaintiff's testimony was inconsistent
with other activities not mentioned by the ALJ. The Court notes, however, that the
ALJ could have discussed all of the following activities:

22  • September 2014: Plaintiff told his physical therapist he was experiencing
finger pain because he "was hit by a soccer ball and fx'd [fractured] L[eft]
mid/prox phal[ange] 4th digit[.]" AR 388.

25  • September-October 2016: Plaintiff resumed working for Super Shuttle,
lifting heavy luggage. AR 831-32.

27  • December 2016: Plaintiff told his doctor that "He is active and he works in
his backyard every day and he goes for walks by the beach." AR 1047; see also

10

AR 1054 (same in November 2016).

- February 2017: Plaintiff got a dog.  AR 987, 1385.
- December 2017: Plaintiff was able to travel internationally.  AR 2869 (he "just returned from Israel 1 week ago").
- January 2019: Plaintiff and his doctors set a goal of exercising 3-4 times per week.  AR 1828-29.

### 3. Reason Three: Conservative Treatment.

The ALJ said Plaintiff's medical records showed "pain improved with conservative measures such as medication, physical therapy, and epidural steroid injections."  AR 23.

Plaintiff argues that he did not receive "conservative" treatment for his left shoulder pain since he had surgery (JS at 7) and that the ALJ mischaracterized Plaintiff's post-surgical records as showing improvement in response to conservative measures like physical therapy (JS at 8).

In fact, Plaintiff's April 2015 left shoulder injury responded well to physical therapy (AR 301, 354); Plaintiff still underwent a surgical repair (AR 486-87), but less than a year after that surgery, he was medically cleared to return to work lifting heavy luggage (AR 705-06) and he, in fact, returned to doing that work (AR 831-32).  While he re-injured his shoulder in October 2016, that does not negate the medical records showing that his left shoulder improved greatly within a year of his April 2015 injury.  Regarding his October 2016 injury, by May 2017, following physical therapy (AR 826), Plaintiff completed a "Pain Assessment" in which he denied pain.  AR 1393.  Thus, the ALJ's finding that Plaintiff's left shoulder pain improved with conservative treatment is supported by substantial evidence.

//
//
//

# IV.
# CONCLUSION

For the reasons stated above, IT IS ORDERED that judgment shall be entered AFFIRMING the decision of the Commissioner.

DATED: September 02, 2020

_____
KAREN E. SCOTT
United States Magistrate Judge